IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GALVESTON BEACH TO BAY PRESERVE, et al.,[1] | § § § | |
| Plaintiffs, | § § § | |
| v. | § § | |
| UNITED STATES ARMY CORPS OF ENGINEERS, et al.,[2] | § § § | CIVIL ACTION NO. G-07-0549 |
| Defendants, | § § § | |
| v. | § § | |
| ANCHOR BAY, LTD. and FRANKLIN JONES, III, | § § § § | |
| Intervenors. | § | |

**MEMORANDUM OPINION AND ORDER**

On March 11, 2009, in a Memorandum Opinion and Order (Docket Entry No. 85) the court enjoined DA Permit SWG-2007-388, which the United State Army Corps of Engineers ("the Corps") had granted to

---

[1] Plaintiffs in this action are: (1) Galveston Beach to Bay Preserve, (2) Spanish Grant Civic Association Sections 1 and 2, Inc., (3) Lafitte's Cove at Pirate's Beach Nature Society, (4) Scenic Galveston, Inc., and (5) Sierra Club.

[2] Defendants in this action are: (1) United States Army Corps of Engineers, (2) Lieutenant General Robert L. Van Antwerp, in his official capacity as Commanding General and Chief of the U.S. Army Corps of Engineers, (3) Colonel David C. Weston, in his official capacity as District Engineer of the U.S. Army Corps of Engineers, and (4) Pete Geren, in his official capacity as Secretary of the Army.

Anchor Bay, Ltd. and Franklin Jones, III ("the intervenors"), approving development of a real estate project on the west end of Galveston Island.  Pending before the court is Defendants' Motion to Lift Injunction (Docket Entry No. 91).  Also pending is the plaintiffs' Motion to Supplement Administrative Record (Docket Entry No. 105).  For the reasons explained below, the court will grant the defendants' motion and deny the plaintiffs' motion.

## I.  **Factual and Procedural Background**

This action concerns a dispute over a permit granted by the Corps to the intervenors approving development of the Anchor Bay Subdivision on the west end of Galveston Island.  The plaintiffs argue that the Corps issued the permit in violation of its requirements under the National Environmental Policy Act ("NEPA").  The background of the dispute is discussed in the court's March 11, 2009, Memorandum Opinion and Order.[3]

To recap briefly, beginning in 2002 the intervenors sought a permit from the Corps that would allow them to proceed with developing the 142-acre Anchor Bay Subdivision.  Development of Anchor Bay cannot proceed unless the intervenors obtain a permit from the Corps pursuant to Section 404 of the Clean Water Act ("CWA") and Section 10 of the Rivers and Harbors Act.  See

---

[3]Memorandum Opinion and Order, Docket Entry No. 85, pp. 2-10.

33 U.S.C. §§ 403, 1344. To comply with requirements under NEPA, the Corps produced an Environmental Assessment ("EA") in 2003 and a revised EA in 2007. With both EAs the Corps also issued a Finding of No Significant Impact ("FONSI"), which has the effect of allowing the Corps to issue a permit without also conducting a comprehensive Environmental Impact Analysis. The Corps issued the Intervenors Permit SWG-2007-38 on September 7, 2007.

On November 27, 2007, the plaintiffs -- a coalition of environmental groups and local homeowners' associations -- filed this action against the Corps and several Army officials.[4] Plaintiffs alleged that the Corps failed to meet several procedural obligations under the NEPA and the CWA during its review of the application for Permit SWG-2007-388.[5] Plaintiffs sought, among other things, injunctive relief declaring Permit SWG-2007-388 void and remanding the permit to the Corps for further action.[6] The intervenors filed an Unopposed Motion to Intervene on March 14,

---

[4] See Plaintiffs' Original Complaint and Application for Injunctive Relief, Docket Entry No. 1.

[5] See id.

[6] See id.

2008,[7] which the court granted on March 17, 2008.[8] All parties filed motions for summary judgment.

On March 11, 2009, the court granted in part and denied in part the plaintiffs' and the defendants' motions for summary judgment. Although the court denied the plaintiffs' motion on most of the grounds raised, it concluded that the Corps' analysis regarding the significance of cumulative impacts was insufficient to satisfy NEPA requirements. The court concluded:

> Although the Corps' analysis of cumulative impacts may have discussed and considered all of the required Fritiofson factors, its explanation of its conclusion as to the significance of cumulative impacts in light of these factors is sorely lacking. The Corps' significance analysis is both too brief and too conclusory for the court to understand, in light of the facts found in the August 2007 EA and the CIA, how the Corps reached its conclusion that the impacts from the Anchor Bay development, when added to the impact from other past, present and reasonably foreseeable future actions, are not significant. Accordingly, the court concludes that the Corps' FONSI was arbitrary and capricious.[9]

The court remanded the case to the Corps to correct the deficiencies in its significance analysis,[10] and enjoined Permit

---

[7] Unopposed Motion to Intervene, Docket Entry No. 29.

[8] Order, Docket Entry No. 31. Intervenors' Plea in Intervention was docketed on the same day. See Anchor Bay's Plea in Intervention, Docket Entry No. 32.

[9] Memorandum Opinion and Order, Docket Entry No. 85, p. 33.

[10] Id. at 33-34.

SWB-2007-388 until such time as the Corps fully satisfied its obligations under NEPA.[11]

On May 25, 2010, the defendants filed a motion to lift the injunction, arguing that an Addendum to Environmental Assessment and Statement of Findings ("the Addendum") (Docket Entry No. 91) produced by the Corps remedies the deficiencies identified by the court. On June 9, 2010, the defendants filed a supplement to the administrative record ("AR") containing the new Addendum (Docket Entry No. 92). The plaintiffs have responded in opposition to the defendants' motion to lift the injunction (Docket Entry No. 104). The intervenors and defendants have replied (Docket Entry Nos. 106 and 107).

The plaintiffs have also filed a motion to supplement the AR with letters from two experts concerning coastal risks associated with the proposed development (Docket Entry No. 105). The defendants and intervenors have responded to the plaintiffs' motion (Docket Entry Nos. 108 and 109).

## II. Applicable Law

A. Dissolving an Injunction

"On a motion to dissolve an injunction, the issue is whether the defendants have properly performed their obligations under the injunction." Association Concerned About Tomorrow, Inc. (ACT) v.

---

[11] Id. at 41-42.

Slater, 40 F. Supp.2d 823, 827 (N.D. Tex. 1998) (citing Sierra Club v. Froehlke, 816 F.2d 205, 215 (5th Cir. 1987)). "[O]nce an agency complies satisfactorily with the requirements of the NEPA, an injunction entered against a proposed project should be vacated." Save Our Sound Fisheries Ass'n v. Callaway, 387 F. Supp. 292, 310 (D.R.I. 1974). The question in this case, therefore, is whether by producing the Addendum the Corps has fulfilled its obligations under NEPA.

**B.   Applicable Law - NEPA**

The court discussed the applicable law for challenges brought under NEPA in the March 11, 2009, Memorandum Opinion and Order.[12] To summarize, "NEPA imposes . . . procedural requirements on federal agencies with a particular focus on requiring agencies to undertake analyses of the environmental impact of their proposals and actions." Dep't of Transp. v. Public Citizen, 124 S. Ct. 2204, 2209 (2004). NEPA requires only that federal agencies be informed of and take a "hard look" at the environmental consequences of their actions before they proceed, not that they actually make wise environmental decisions. Sabine River Authority v. U.S. Department of Interior, 951 F.2d 669, 676 (5th Cir. 1992).

When a federal agency contemplates taking an action that may affect the environment, NEPA requires the agency to produce either

---

[12]Memorandum Opinion and Order, Docket Entry No. 85, pp. 10-16.

a comprehensive Environmental Impact Statement ("EIS") or a somewhat less rigorous Environmental Assessment ("EA"), depending on the scope of environmental impact at issue. See O'Reilly v. U.S. Army Corps of Engineers, 477 F.3d 225, 228 (5th Cir. 2007). An agency must prepare an EIS for "every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment . . . ." 42 U.S.C. § 4332(2)(C). If an agency action is one that does not clearly "significantly affect the quality of the human environment," but is not so insignificant as to be categorically exempted from the requirement to prepare an EIS, Council on Environmental Quality ("CEQ") regulations provide that the agency should prepare an EA. Public Citizen, 124 S. Ct. at 2209-10 (citing 40 C.F.R. §§ 1501.4(a)-(b)). An EA should be "a concise public document . . . that serves to . . . [b]riefly provide sufficient evidence and analysis for determining whether to prepare an [EIS] . . . ." 40 C.F.R. § 1508.9(a)(1). An EA must culminate in either of two findings: (1) a finding that the proposed action will significantly affect the quality of the human environment, such that a full EIS is required, or (2) a FONSI, such that a full EIS is not required. Sabine River Authority, 951 F.2d at 677. If the agency makes a FONSI, it "must briefly state 'the reasons why the proposed agency action will not have a significant impact on the human environment.'" O'Reilly, 477 F.3d at 228

(quoting Coliseum Square Ass'n, Inc. v. Jackson, 465 F.3d 215, 224 (5th Cir. 2006)).

C.  **Cumulative Impact**

In the present action the Corps produced an EA and FONSI concluding that an EIS was not necessary for the Anchor Bay project.  At issue in the court's prior Memorandum Opinion and Order was whether the Corps' FONSI was adequately supported by the EA.  The plaintiffs' Motion for Summary Judgment argued that the facts provided in the EA supported a finding of a significant cumulative impact on the environment under the factor listed in 40 C.F.R. § 1508.27(b)(7), which states that "[s]ignificance exists if it is reasonable to anticipate a cumulatively significant impact on the environment."  CEQ regulations define cumulative impact as:

> the impact on the environment which results from the incremental impact of the action when added to other past, present and reasonably foreseeable future actions regardless of what agency (Federal or non-Federal) or person undertakes such other actions.  Cumulative impacts can result from individually minor but collectively significant actions taking place over a period of time.

40 C.F.R. § 1508.7.  The Fifth Circuit has explained that:

> a meaningful cumulative effects study must identify: (1) the area in which effects of the proposed project will be felt; (2) the impacts that are expected in that area from the proposed project; (3) other actions -- past, proposed, and reasonably foreseeable -- that have had or are expected to have impacts in the same area; (4) the impacts or expected impacts from these other actions; and (5) the overall impact that can be expected if the individual impacts are allowed to accumulate.

Fritiofson v. Alexander, 772 F.2d 1225, 1245 (5th Cir. 1985), (overruled on other grounds by Sabine River Authority, 951 F.2d at 678 & n.1).

The court concluded in the March 11, 2009, Memorandum Opinion and Order that the Corps' conclusion regarding cumulative impact was arbitrary and capricious because the discussion in the EA was too brief and conclusory to support a finding of no significant cumulative impact. Agency actions under NEPA are evaluated under the deferential arbitrary and capricious standard. Sabine River, 951 F.2d at 678. See also 5 U.S.C. § 706(2)(A) (allowing courts to "set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."). Under this standard of review, "a reviewing court has the 'least latitude in finding grounds for reversal.'" Sabine River Authority, 951 F.2d at 678 (quoting North Buckhead Civic Ass'n v. Skinner, 903 F.2d 1533, 1538 (11th Cir. 1990)).

## III. Analysis

The court enjoined Permit SWG-2007-388 because the EA provided no explanation of how the Corps, in light of the facts presented in the EA regarding cumulative impact, reached the conclusion that the cumulative impact of the development would not significantly affect the environment. The question now before the court is whether the Addendum sufficiently explains the Corps' conclusion regarding cumulative impact. The court concludes that it does.

The Addendum provides twenty-two pages summarizing the facts considered in the cumulative impacts analysis and explaining how the Corps reached the conclusion that the cumulative impact would not significantly affect the environment.[13] Regarding uplands, the Addendum states that the project will affect 142 acres of upland coastal prairie, offset by 19.76 acres set off from development.[14] It acknowledges that the development will compromise the natural environment in a number of ways.[15] It also acknowledges that the offset acreage for uplands does not match the amount developed, but notes that acre for acre mitigation for upland impacts is not required by the Corps' regulatory requirements, and states that the

---

[13] Addendum to Environmental Assessment and Statement of Findings ("Addendum"), Contained in Supplement to Administrative Record, Docket Entry No. 92, AR 2501-2522.

[14] Id. AR 2506.

[15] Id. AR 2509-2514.

mitigation for the Anchor Bay project is sufficient under the regulations.[16] It states that the development will result in an approximately three percent decrease in the 2007 upland baseline on Galveston Island, and that the site "is not representative of a higher quality upland prairie environment."[17] The Addendum concludes that because the impact will be primarily local, the quality of uplands affected is low, the acreage to be developed represents a relatively small percentage of remaining uplands in the area, and the plan calls for a set-off of mitigating acreage, "the impacts to uplands resulting from the Anchor Bay project are not cumulatively significant."[18]

Regarding wetlands, the Addendum states that the project will consume 3.63 acres of wetlands, offset by 37.06 acres of wetlands donated to a conservation organization and by 5.85 acres of new man-made wetlands incorporated into the project.[19] It states that the loss of wetlands will constitute approximately a 0.04 percent decrease in the 2005 estimated saltwater wetland baseline and approximately a 0.3 percent decrease in the estimated freshwater wetland baseline, but notes that "the permittee will be

---

[16] Id. AR 2514-2515.

[17] Id. AR 2519.

[18] Id. AR 2520.

[19] Id. AR 2507-2508.

compensating for wetland impacts at an approximate 11:1 wetland compensation to impact ratio."[20] The Addendum concludes,

> Because the wetland mitigation offsets the wetland impacts that are proposed, we have determined that the impacts from the project are minimal compared to the remaining acreage of wetlands left in the study area and that they will not contribute to the overall wetland losses that have occurred to date on the West End of Galveston Island.[21]

The Addendum further concludes that because the wetlands impacts are small in size, localized, and adequately mitigated, they are not cumulatively significant.[22]

Regarding coastal hazards, the Addendum acknowledges that portions of the project area were listed as Imminent and High for coastal hazards in a recent study of geohazard potential in the area, but states that construction activities associated with the development are expected to have negligible direct impacts on coastal hazards within the study area for the following reasons: the project is located in the interior of the island rather than on the coast, and is protected by a dune ridge to the south; the location avoids an existing marsh to the north, which reduces local wave height; the project is not located in a Special Hazard Zone Washover Path; the project is not expected to affect flood heights

---

[20] Id. AR 2516.

[21] Id. AR 2521.

[22] Id.

or to contribute to subsidence; all canals will be contained within existing uplands areas and will have concrete bulkheads stabilized by cordgrass shelves so as to minimize the threat of erosion; all houses in the development will be elevated on pilings according to County and FEMA standards.[23] The addendum states that contemporary projects such as Anchor Bay result in substantially less risk of coastal hazards than did previous development projects because of mitigating design factors, such as "minimal excavation along the bayside shorelines, protecting shorelines from erosion by incorporating planting of wetland vegetation, avoidance of protective wetland habitats along the bay, and the incorporation of protective structures such as breakwaters that dampen wave energy and protect the shoreline from wind driven wave erosion."[24] The Addendum concludes that the location and the design of the project minimize the cumulative coastal hazards that are likely to result from the project.[25]

The court concludes that the Corps has provided a rational explanation for its conclusion that the development will not result in a significant cumulative impact to the environment. The Addendum provides multiple reasons why the Corps concludes that the

---

[23] Id. AR 2509.

[24] Id. AR 2516-2517.

[25] Id. AR 2521-2522.

cumulative impact to uplands, wetlands, and coastal hazards will not be significant. It is not the court's role to question the accuracy of the Corps' stated facts or the wisdom of its judgment. The court's only role in this context is to inquire whether the Corps has provided an explanation for its conclusion that is not arbitrary and capricious. The court concludes that the Corps has provided such an explanation.

Because the Corps has fulfilled the obligations the court placed on the Corps when it entered the injunction, the court will dissolve the injunction. See Association Concerned About Tomorrow, 40 F. Supp.2d at 827.

## IV. The Plaintiffs' Motion to Supplement

The plaintiffs have filed a motion to supplement the AR with letters from two experts concerning coastal risks associated with the proposed development (Docket Entry No. 105). The court has not considered these letters in ruling on the motion to lift the injunction. When a court reviews an agency action under the "arbitrary and capricious" standard, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." Camp v. Pitts, 93 S. Ct. 1241, 1244 (1973); see Sierra Club v. United States Fish & Wildlife Serv., 245 F.3d 434, 444 (5th Cir. 2001)

("Review is generally limited to the record in existence at the time the agency made its decision."). Because the letters were not part of the AR at the time of the decision in question, it is not proper for the court to consider them for the pending motion. The plaintiffs have provided the court with no reason why they could not have provided the same or similar information to the Corps at an earlier time such that the information would have been incorporated into the AR. The court will therefore deny the plaintiffs' motion.

The court notes that had it considered the evidence put forth by the plaintiffs it would not have reached a different conclusion regarding the defendants' motion to lift the injunction. The Corps has provided a detailed explanation of its conclusion concerning cumulative impacts, and under the arbitrary and capricious standard the Corps' explanation is clearly sufficient to meet its obligations.

## V.  Conclusion and Order

For the reasons explained above, the court concludes that the Corps has provided a sufficiently detailed explanation of its conclusion regarding cumulative impacts that it has fulfilled its obligations under NEPA. Accordingly, Defendants' Motion to Lift Injunction (Docket Entry No. 91) is **GRANTED** and the injunction

against Permit SWG-2007-388 contained in the court's March 11, 2009, Memorandum Opinion and Order is **DISSOLVED**.

Plaintiffs' Motion to Supplement Administrative Record (Docket Entry No. 105) is **DENIED**.

**SIGNED** at Houston, Texas, on this 25th day of August, 2010.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE